LYMAN B. FRAZIER *vs.* WILLIAM A. SIMMONS & another.

Suffolk. Jan. 19. — June 24, 1885. FIELD, DEVENS, & COLBURN, JJ., absent.

There may be a bargain and sale of goods sufficient to transfer the title, and thus to support an action for goods bargained and sold, without any such delivery as will amount to a transfer of possession.

A. sold B. certain shares of stock "payable and deliverable, buyer's option, sixty days." By the rules of the stock exchange, of which both parties were members, on all contracts for stocks sold on time either party might require deposits to be made at any time during the existence of the contract; and the seller might have the privilege of depositing the whole amount of the stock sold in lieu of the cash, in which case the margins should be paid to him by the buyer and the amount credited on the contract. Two days after the sale in question, A. called for a margin of a certain per cent of the contract price, and, on the next day, deposited the certificate of the stock with a trust company, with a power of attorney for its transfer executed in blank. The trust company gave A. a receipt for the stock, agreeing to deliver it upon the return of the receipt indorsed by A. and B.; and B. paid A. the amount of the margin called for. *Held*, that this transaction amounted to a transfer of the title, subject to the right of A. to require the trust company to obtain the price before surrendering possession of the certificate; and that, after the expiration of the sixty days named in the contract, A. could maintain an action against B. for the balance of the price.

If a broker, at the time he sells a certain number of shares of stock, has in his possession certificates for that number of shares of such stock which he was duly authorized by his principal to sell for him, this takes the case out of the statutory provision against stockjobbing, Gen. Sts. *c.* 105, § 6.

CONTRACT to recover the balance of the purchase money for certain shares of stock sold by the plaintiff to the defendants. Trial in the Superior Court, before *Bacon*, J., who reported the case for the determination of this court, in substance as follows:

The plaintiff and the defendants were brokers, and members of an association in Boston known as the Boston Mining and

Stock Exchange, from 1880 until the early part of the year 1882. On October 25, 1881, the plaintiff at said Exchange, in open board and by auction in the usual way, sold the defendants three hundred shares of the stock of the Milton Mining and Milling Company, a corporation established under the laws of the State of Maine, on sixty days, buyer's option; and, in pursuance of the usage of the Exchange, to allow one day's delay before the papers are passed in such cases, on October 26, 1881, a paper was executed and signed by the defendants at their place of business in Boston, and was there delivered to the plaintiff, as follows: " 300 Shares. Boston, Oct. 25, 1881. We have purchased of L. B. Frazier three hundred shares of the stock of the Milton Mining and Milling Company at one dollar and nineteen cents per share, payable and deliverable buyer's option, sixty days, with interest at the rate of six per cent per annum."

In these transactions both the plaintiff and the defendants were, without notice to each other, acting as brokers for other parties; and, at the time of the execution of said paper, the plaintiff had in his possession certificates for three hundred shares of said stock, which he was duly authorized by his principal to sell for him.

Said certificates were not put in evidence, it being agreed at the trial that they appeared upon their face to have been issued to parties not concerned in this suit, and that each certificate bore upon its back, at the time the above paper dated October 25 was signed, the usual power of attorney to transfer the stock thereby represented, such power of attorney appearing upon its face to have been executed in blank (and witnessed) in the usual way by the party to whom such certificate appeared upon its face to have been issued; and said certificates also bore upon their face a provision that said stock was only transferable on the books of the company; and it was further agreed that no transfer of the stock in question on the books of said Milton Mining and Milling Company, either to the plaintiff or to the defendants, was ever made or attempted.

On October 27, 1881, the plaintiff called for a margin of twenty per cent of the contract price; and on the following day, October 28, in pursuance of certain rules of said Exchange, a copy of which rules is hereinafter set forth, the plaintiff deposited

in the hands of the American Loan and Trust Company, at its office in Boston, said certificates for said three hundred shares of stock, with a power of attorney on each, executed in blank, and received from said trust company the following receipt: " Three hundred shares. Boston, Oct. 28, 1881. Received of L. B. Frazier certificate of three hundred shares Milton Mining and Milling Co. to be delivered upon the return of this receipt indorsed by himself and W. A. Simmons & Co. N. W. Jordan, Actuary."

On the same day, the acts being legally contemporaneous, the defendants paid the plaintiff the sum of $71.40, being twenty per cent of the contract price of said stock, the plaintiff retaining possession of said receipt.

The rules of said Exchange, above referred to, are printed in the margin.*

---

" On all contracts for stocks or bonds sold on time, either party may require deposits to be made at any time during the existence of the contract; whenever such deposit is called, it shall be made as follows:

" On all buyer contracts where deposits are called before the next session of the board after which said contract is made, each party shall deposit ten per cent of the cash, and the buyer shall deposit, in addition to ten per cent of the cash price, an amount equal to the difference between the cash and contract prices.

" On all seller contracts where deposits are called before the next session of the board following the sale, each party shall deposit ten per cent of the cash price, and the seller shall deposit, in addition to ten per cent of the cash price, an amount equal to the difference between the cash and the contract prices.

" Where deposits are called at any other time, they shall be made as follows: On buyer contracts, where the cash price is, at the time a deposit is called, below the contract price, the buyer shall deposit an amount equal to the difference between the contract price and the cash price at the time the deposit is called, and ten per cent of said cash price additional; and the seller shall deposit ten per cent of the cash price at the time the said deposit is called. And on all seller contracts, where the cash price is below the contract price at the time the deposit is called, the buyer shall deposit an amount equal to the difference between the contract and cash price, and ten per cent of the cash price additional; and the seller shall deposit ten per cent of the contract price.

" On all buyer contracts, where the cash price at the time said deposit is called is at or above the contract price, the seller shall deposit an amount

On December 15, 1881, the stock of the Milton Mining and Milling Company having fallen largely in the market, the plaintiff called at the office of the defendants, who were under many contracts similar to the one in this case, and saw both the defendants, and Simmons then said to the plaintiff that his firm was trying to arrange some compromise with those who held such contracts; that "when he [Simmons] had them all in line he would see what they [the firm] would do, and that they were ready to do by the plaintiff as by the others;" and the plaintiff declined to consider any compromise, and said he must have his money.

On December 24, 1881, the plaintiff indorsed his name on the back of the receipt.

On January 17, 1882, the plaintiff again called regarding this matter of the stock at the office of the defendant Simmons, who told him that he had compromised with the others holding similar contracts, and that he was ready to pay him (the plaintiff) the same proportion as he had paid the others; but the plaintiff declined to sign the compromise, and insisted on having the whole amount.

---

equal to the difference between the contract and the cash prices, and ten per cent of the cash price additional; the buyer shall deposit ten per cent of the contract price. On all seller contracts, where the cash price at the time the deposit is called is above the contract price, the seller shall deposit an amount equal to the difference between the contract price and the cash price, and ten per cent of the cash price additional; and the buyer shall deposit ten per cent of the contract price."

Rule No. 25.

" When additional margins are called, each party shall deposit an amount which would leave a margin of ten per cent, provided the contract were closed at the cash value of the stock at the time the margin is called; and either party may call for an additional margin as often as necessary until the expiration of the contract. The seller shall always have the privilege of depositing the whole amount of the stock sold in lieu of the cash, in which case the margins shall be paid to him by the buyer, and the amount credited on the contract, and bear the same rate of interest as specified in the contract. Margins called before 12.30 P. M. shall be deposited before 2 o'clock of the same day; if called after 12.30 P. M., shall be deposited before 11 o'clock the next morning.

" All margins shall be placed in the ' American Loan and Trust Company,' when requested by either party."

At the trial the plaintiff produced said receipt, and was ready and willing to surrender the same upon payment of the amount claimed to be due, and offered to do so; and it was agreed that said certificates were still in the hands of the American Loan and Trust Company, ready to be delivered up on the surrender of said receipt, and that the market value of said stock on December 24 and 27, 1881, was thirty cents per share.

The defendants testified that, if the plaintiff had asked the defendants to indorse said receipt in order to enable them to take said certificates from the trust company, they would have done so; and contended that a tender was necessary, and that they were not liable in this action, unless said stock or receipt was tendered at the precise time called for by the contract.

The defendants further contended, that in no event could the plaintiff recover more than the difference between the contract price and the market value of the stock at the time of the alleged breach of contract.

The plaintiff contended, that, by the terms of the contract dated October 25, 1881, the defendants were entitled to call for a delivery of the stock at any time during the sixty days, on paying the contract price; that they were bound to take and pay for it at that rate at the expiration of the sixty days, or at any time thereafter upon tender and demand by the plaintiff; that the transactions between the parties subsequently to the date of the contract amounted to an exercise of whatever option was contained in the contract; and that the defendants were therefore liable for the full contract price, less the amount paid.

The judge ruled that there was no question for the jury; that, on the uncontradicted facts in the case, the plaintiff was entitled to recover the full contract price of the stock less the amount paid on October 28, 1881; and ordered a verdict for the plaintiff in the sum of $321.

If the rulings were correct, judgment was to be entered on the verdict; otherwise, a new trial to be ordered.

*C. F. Hall*, for the defendants.

*J. J. Myers*, for the plaintiff.

C. ALLEN, J. There may be a bargain and sale of goods, sufficient to transfer the title, and thus to support an action for goods bargained and sold, without any such delivery as will

amount to a transfer of possession. The former is quite consistent with the vendor's retaining a lien for the price, and thus retaining possession till the price is paid. *Morse* v. *Sherman*, 106 Mass. 430, 432. *Haskins* v. *Warren*, 115 Mass. 514, 533. *Safford* v. *McDonough*, 120 Mass. 290. *Arnold* v. *Delano*, 4 Cush. 33, 38. *Simmons* v. *Swift*, 5 B. & C. 857. 2 Kent Com. 492. In the present case, it may be assumed that the title to the shares did not pass at once, upon the completion of the contract of October 25, 1881. The words " we have purchased " do not necessarily import a present transfer of property to the purchaser, if it appears that the intention of the parties was otherwise. *Sherwin* v. *Mudge*, 127 Mass. 547. The words " payable and deliverable, buyer's option, sixty days," go to show that the parties did not intend a present transfer. But according to the rules of the Mining and Stock Exchange, to which both parties belonged, on all contracts for stocks or bonds sold on time, either party might require deposits to be made at any time during the existence of the contract; and when such deposit should be called for after the next session of the board, on buyer contracts where the cash price, at the time a deposit is called, is below the contract price, the buyer shall deposit an amount equal to the difference between the contract price and the cash price at the time the deposit is called, and ten per cent of said cash price additional; and the seller shall deposit ten per cent of the cash price at the time the said deposit is called. And the seller shall always have the privilege of depositing the whole amount of the stock sold in lieu of the cash, in which case the margins shall be paid to him by the buyer, and the amount credited on the contract.

It does not expressly appear, in the present case, that on October 27 the cash price of the shares in question was below the contract price; but this is fairly to be inferred from the call that was made, and the defendants' acquiescence in it, and indeed nothing to the contrary has been suggested by the defendants at the argument. On that day, the plaintiff called for a margin of twenty per cent of the contract price; and on October 28, in pursuance of the above rules, he deposited with the American Loan and Trust Company the certificates of the shares, with powers of attorney for their transfer executed in blank;

and on the same day the defendants paid to the plaintiff twenty per cent of the contract price. This was a part payment of the price. The trust company thereafter held the shares, and the plaintiff could not withdraw them without the defendants' concurrence. Nothing more was to be done by the plaintiff to effect a complete delivery of them, except to indorse and surrender the receipt taken from the trust company. The specific shares were appropriated to the defendants, the price was ascertained, the defendants were entitled to obtain possession of them at any time upon payment of the balance of the price, the receipt was merely in the nature of a vendor's lien for the price, and the whole transaction was assented to by the defendants; and we are of opinion that this amounted to a transfer of the title, subject simply to the right of the plaintiff to require the trust company to obtain the price before surrendering the possession of the certificates. The plaintiff was bound to indorse the receipt, as soon as payment should be made. The deposit of the stock in lieu of the cash, and the payment of the margin by the defendants to the plaintiff, to be credited on the contract, under the twenty-fifth rule, show a change in the condition of the parties after that transaction, and amount to a transfer of title, and entitle the plaintiff, after the expiration of the sixty days, to maintain an action for the price. See also *Turner* v. *Langdon*, 112 Mass. 265; *Middlesex Co.* v. *Osgood*, 4 Gray, 447.

The defendants further contend that it was necessary for the plaintiff, in order to make out a *prima facie* case, to show that he was authorized by the owner to sell the shares at the time when the contract was made. But this objection is covered by the statement in the report, that, at the time of the execution of the paper, the plaintiff had in his possession certificates for three hundred shares of the stock, which he was duly authorized by his principal to sell for him. This takes the case out of the statute. Gen. Sts. *c.* 105, § 6.          *Judgment on the verdict.*