### WARE et al. v. HOOPER et al.

(Circuit Court, S. D. California. November 27, 1899.)

CONTRACT—CONSTRUCTION—SALE OR PLEDGE.

Two water companies, owned by the same stockholders, and operated together, were largely indebted, and unable to raise money to pay their debts or carry on their operations, by reason of the fact that the title of their most valuable property was disputed and in litigation. In this state of their affairs, the corporations and their stockholders entered into a written contract with their principal creditor, who held a mortgage which was due, by which they agreed to deposit a controlling part of the stock of each corporation with a trustee, to become the absolute property of the creditor at a stated time, if the indebtedness had not at that time been paid, in consideration of which the creditor agreed to extend the time for payment of the mortgage, to take up their remaining indebtedness, to advance money to complete certain contracts, and, in the event he became the owner of the stock, to make further advances necessary to develop the property. *Held*, that such contract was one of conditional sale of the stock, and not of pledge, and that, in the light of the circumstances, it was not unconscionable.

This was a suit in equity to redeem certain shares of stock claimed to have been deposited as a pledge. On final hearing.

Dillon & Dunning, for complainants.
Borden & Carhart and Freeman & Bates, for defendants.

ROSS, Circuit Judge. This suit was brought for the redemption of 1,949½ shares of the stock of the defendant West Los Angeles Water Company, and 1,615½ shares of the defendant West Side Water Company, deposited by the complainants and their assignor, John A. Pirtle, with Balfour, Guthrie & Co., under a certain written agreement, of date March 11, 1897, and for relief against certain assessments made by the corporations mentioned on the stock thereof owned by the complainants. There having been a redemption, during the hearing of this cause, from the sales of that stock under those assessments, the only question remaining is as to the alleged right of the complainants to redeem the stock first referred

to. The case shows that these companies are corporations organized under the laws of the state of California. Prior to March 11, 1897, the West Side Water Company had, and was operating, in the southwestern portion of the city of Los Angeles, a water system of its own, consisting of wells, engines, and a distributing plant. The West Los Angeles Water Company owned 60 acres of land, on which it had developed several hundred inches of water, and had acquired rights of way for six or seven miles for pipe lines to be used in the distribution of its water for irrigation and domestic uses in the same section of the city, and in adjacent territory. The stock of the two corporations was owned by the same persons, and the same persons constituted the board of directors of each corporation. The corporations were, according to the averments of the bill, and as a matter of fact, acting together. The bill alleges that their stock was on the 11th of March, 1897, reasonably worth $1,-000,000, and that their joint and several indebtedness did not then exceed $107,962, which, according to the bill, was due mostly to the defendants Hooper and to certain corporations in which they were largely interested, and was amply secured by mortgage upon all of the property of the West Los Angeles Water Company to the defendant George W. Hooper, as trustee. The bill further alleges that for the purpose of obtaining funds with which to pay that indebtedness, and to further extend and improve its business, the West Los Angeles Water Company had, prior to the 11th day of March, 1897, caused to be issued 700 first mortgage bonds, of the par value of $500 each, dated March 15, 1896, and payable 10 years after date, with interest at 6 per cent. per annum, and had secured the payment thereof by mortgage on all of its property, rights, and franchises to the California Safe-Deposit & Trust Company, a corporation, as trustee for the owners and holders of the bonds, which bonds were in the possession of the defendant Charles A. Hooper, and subject to his control; that the defendant Charles A. Hooper had authority to sell those bonds, and could have done so prior to the 11th of March, 1897, in sums sufficient to pay the indebtedness of the said corporations, and procure the funds necessary for the further prosecution of their business, but failed to make such sales, and that by reason of such failure the corporations became in great financial distress, and unable to procure money from any other source than the defendants Hooper; and that, such being the case, the said corporations and their stockholders were on March 11, 1897, forced to enter into an agreement in writing with the defendant C. A. Hooper, which is set forth at large in the amended bill, and which provides, in substance, that the corporations defendant would execute and deliver a valid mortgage, covering all of the property of the West Side Water Company, to secure the bonds executed by the West Los Angeles Water Company, to the California Safe-Deposit & Trust Company, as trustee for the owners and holders of the bonds, aggregating in amount $350,000, and also a valid mortgage to George W. Hooper, as trustee, on all of the property of the West Side Water Company, to secure the payment to him on or before June 15, 1897, of the indebtedness of $107,962, with interest

98 F.—11

thereon at 7 per cent. per annum from November 28, 1896, and would obtain the written consent and ratification of all of the stockholders of the West Side Water Company to those mortgages; and also agreed that the stockholders of the two corporations would indorse and deliver to Balfour, Guthrie & Co., at San Francisco, Cal., full shares of the stock of each company sufficient to constitute a majority thereof, and would accompany such stock with written instructions to that firm to deliver the stock to Charles A. Hooper, as absolute owner thereof, on June 15, 1897, provided that on that date the indebtedness then payable to George W. Hooper, trustee, and any indebtedness then owing to C. A. Hooper, by the two corporations, or either of them, had not been fully paid. By the agreement of March 11, 1897, the corporations further covenanted to obtain written contracts from the owners extending the then existing options to purchase the E. $\frac{1}{2}$ of block 22 and all of block 37 of the Providencia and Scott tract of land, situated in Los Angeles county, until July 1, 1897, and that they would consummate all of the foregoing agreements provided for on their part within 30 days from March 11, 1897. By Charles A. Hooper it was agreed that upon the consummation of the covenants on the part of the corporations within the time specified, and provided he obtained the consent of one J. F. Sims thereto, he would procure from George W. Hooper, trustee, an extension of the time of payment until July 15, 1897, of the indebtedness then existing from the West Los Angeles Water Company to George W. Hooper, trustee, and also would pay to Lacy & Co., of Los Angeles, an indebtedness of $5,400 then existing from a certain construction company to that firm, and that in the event he should become the absolute owner of a majority of the stock of the corporations on June 15, 1897, as provided for in the contract, he would, on delivery of such stock to him, and the transfer thereof as he should direct on the books of the companies, and upon receiving the resignation of a majority of the then directors of each company, and the election of such directors as he should name, and the placing of such directors in the control of the property of the corporations, cause the said indebtedness to George W. Hooper, trustee, to be extended one year from June 15, 1897; and that during such year he would operate and finance the affairs of the corporations, providing such moneys therefor as the directors of the corporations should consider best, for which moneys so advanced, and for any others which might be owing to him, he should receive interest, payable monthly, at the rate of 6 per cent. per annum; and that the indebtedness to George W. Hooper, trustee, should, during the said year's extension, bear interest at the same rate, payable monthly; and that so long as any indebtedness existed to him or to George W. Hooper, trustee, from the companies, or either of them, he would, provided the minority of the stockholders of the companies desired it, consent that the bonds of the West Los Angeles Water Company might be sold at 90 cents on the dollar of their face amount, but reserving the right in him, in the event of an offer being made for any of such bonds at that price, to take the bonds himself at the same price in liquidation of the indebtedness then

existing to him and to George W. Hooper, trustee, and thereupon to refuse to sell further bonds at the said price; and that prior to June 15, 1897, the corporations might sell the bonds, in lots of not less than $25,000, at 90 cents on the dollar, and that said George W. Hooper, trustee, would deliver the bonds sold to the purchaser on payment to him of the purchase price, and credit the money received as of date June 15, 1897; and that in case any funds should be required prior to June 15, 1897, to pay for necessary work thereafter performed in excavating and back-filling for the construction of a certain extension of the plant, known as the "Vermont Avenue Extension," and for any arrangements it might be necessary to make should the firm of Lacy & Co. default in their contract for the furnishing of pipe and fixtures, or should Lacy & Co. or their contractors default in the hauling and laying thereof, he would, if the stockholders of the corporations should first furnish one-half of the funds necessary .for those expenditures, furnish the other one-half thereof as a loan to the corporations, which loan should fall due on June 15, 1897, and bear interest, payable monthly, at the rate of 6 per cent. per annum (it being also provided that any contracts for the Vermont Avenue Extension which should require payment prior to June 15, 1897, should be necessary, and let at the lowest contract rates, and that the said Charles A. Hooper should have timely notice when the same should be paid); the corporations further declaring, in and by the contract of March 11, 1897, that the title of the West Side Water Company to all of its property to be included in the mortgages mentioned was perfect, and subject to prior liens to the extent of $10,900 principal, and no more, and that they would furnish to the said Charles A. Hooper certificates of title to that effect.

It is contended on the part of the complainants, not only that the defendant Charles A. Hooper forced the defendant companies to enter into the contract, but that its provisions are so extortionate and unconscionable that a court of equity ought to hold it invalid. It is further claimed that the contract was made without consideration, and that upon its face it constituted a pledge, only, of the stock in controversy.

I am unable to see any good ground for any of these contentions. The record shows that at and prior to the time of the making of the contract in question the defendant companies were largely indebted; the chief amount being that evidenced by the mortgage for $107,962 to George W. Hooper, as trustee, the principal part of which was due to the defendants Hooper, and to corporations in which they were largely interested, and that were under their control. The major part of that indebtedness appears to have been incurred for pipe laid for the carrying and distribution of the waters developed and claimed by the water companies. It is contended that at the time of the making of the contract of March 11, 1897, the combined property of the two companies aggregated in value more than $1,000,000. Its chief value depended upon whether the West Los Angeles Water Company, in which was the great bulk of the property, really owned the water it developed upon its 60

acres of land. If so, the property, including the pipe line and its distributing system for the furnishing of water for domestic purposes throughout the southwestern portion of the city of Los Angeles and adjacent territory, and the furnishing of the water for irrigation purposes, was, no doubt, of great value. But the fact, as shown by the record, is that its right to the water so developed was then being contested in the courts, not only by individual persons claiming riparian rights, but by the city of Los Angeles as well. The real value of the property of the West Los Angeles Water Company therefore depended upon the result of that litigation, and that is obviously the reason why the bonds which had been prepared and secured by a mortgage upon the property of the West Los Angeles Water Company were not available for the discharge of its indebtedness. No prudent business man would buy bonds secured only upon property the chief element of whose value was in litigation, and there is testimony to the effect that efforts made for the sale of the bonds met with no success for that reason. The contention on the part of the complainants that the defendant Charles A. Hooper prevented the sale of the bonds has no justification in the record. There was some talk of somebody wanting to buy the bonds, but no one willing to buy was ever produced or named; and, in view of the condition of the title to the water, it is wholly unreasonable to suppose that any sane man would have bought them at anything like their face value. As neither company appears to have had any other resource than its water and water plant, together with the land upon which the water was developed, it is evident—and such is the testimony on the part of the complainants as well as the defendants—that the companies were unable to pay their indebtedness. The mortgage to George W. Hooper, as trustee, being due, could, of course, have been foreclosed; but such does not appear to have been the wish of the holder of the mortgage. Charles A. Hooper came to Los Angeles from San Francisco for the purpose of making, if possible, some satisfactory arrangement with the corporations. Repeated interviews were had between him and the various stockholders of the corporations, including the complainant Ware and his assignor, Pirtle, upon the subject of the indebtedness of the companies, and in an effort to avoid a foreclosure of the then due mortgage, and to adjust the business relations of the respective parties in some satisfactory manner. These conferences continued from time to time for a week or more, and seem to have been participated in by the stockholders generally, both in and out of formal meetings. They culminated in the contract of March 11, 1897. It is idle to say, as do counsel for the complainants, that the corporations defendant were forced by the Hoopers, or either of them, to enter into that contract. Their directors were, no doubt, convinced by the financial circumstances of the companies (which, however, neither of the Hoopers appear to have brought about) that the best thing the corporations could do was to enter into that agreement. That it was voluntarily done on the part of the defendant water companies abundantly appears from the evidence, including that of the complainant Ware and of his

assignor, Pirtle. Speaking of the negotiations leading up to the execution of the contract in question, Pirtle states in his testimony:

"The condition of the company was that it was in financial embarrassment by reason of the general depressed financial condition of the country at that time. Could not place our securities, and therefore failed to pay the pipe contract; and there were some local debts which we were desiring to pay, to save the credit of the company; and the fact that Mr. Hooper was a moneyed man of San Francisco, well connected, and on the promises and talks that we had, we thought that the remaining stock left us would be of great value, under the conditions, with everything paid, and the companies financially successful, and within a year the bonds could be sold."

The complainant Ware, in answer to the question of his counsel: "What induced the two companies (the two defendant water companies) and their stockholders to enter into the agreement of March 11, 1897, with the defendant Hooper?"—answered:

"On the reputation of C. A. Hooper and his brother, George W. Hooper, as [at] that time known to us, was of such a character that, in our conference on the subject with our directory, we decided that, to obtain his active aid and assistance as he had outlined to us, half of our holdings in the present company would be more valuable than to face a condition of affairs that were then facing us, with a prospective foreclosure of mortgage calling for bills that were at that time due on the part of Mr. Hooper; and, relying upon promises to put us upon good ground, we entered into that contract."

The witness Hallett, also one of the stockholders of the West Los Angeles Water Company, when asked why the contract in question was entered into, answered:

"Well, we owed Mr. Hooper some money. It was due, and he wanted it, and we weren't able to pay it at the time, as I understand it. This seemed to be in the nature of a compromise to put off the evil day, or something of that kind."

There is nothing in the record to the contrary of this. That the contract was based upon sufficient consideration does not admit of question, and that it constituted a conditional sale, and not a pledge, of the stock of the corporations deposited with Balfour, Guthrie & Co., not only appears from its clear and unambiguous language, but from the testimony of the complainant Ware and of his assignor, Pirtle, above referred to, where each of them testifies, in effect, that they considered that, with Charles A. Hooper taking hold of the property under the terms and conditions specified in the contract, half of their stock would be more valuable than the whole of it under the old conditions. Nothing more need be said, I think, to show that the contract of March 11, 1897, did not constitute a pledge of the stock in question, but a conditional sale of it, and that, upon the happening of the conditions therein specified, it became the absolute property of the defendant Charles A. Hooper. The evidence shows that those conditions were met, and that Hooper thereupon received the stock in question as, and thereupon became, its absolute owner. Being of that opinion, I need not consider any other matter argued by counsel, except to say that unless the West Los Angeles Water Company succeeds in making good its claim to the water developed by it, and which, as has been said, was in litigation at the time of the execution of the contract in question, it is difficult to see how the defendant Charles A. Hooper will ever get

back the many thousands of dollars the evidence shows he paid out under and in pursuance of the provisions of the agreement. I think it clear, in view of the facts appearing in the record, that the contract cannot be properly held to have been extortionate or unconscionable on his part. A decree will be entered dismissing the bill at the complainants' cost.