Patrick Ryan et al., for use, etc., v. P. L. Kimberly et al.

Gen. No. 11,522.

1. GARNISHMENT—*what subject to.* It is well established in this state that a debt payable outside of this state is subject to garnishment here.

2. GARNISHMENT—*what subject to.* A creditor may by garnishment recover only such indebtedness as his debtor might recover by an action of debt or by an action of *indebitatus assumpsit.*

3. GARNISHMENT—*what not subject to.* A creditor cannot recover by garnishment an unliquidated sum in damages due from another to his debtor.

4. GARNISHMENT—*what not subject to.* Where the debtor of the creditor proceeding by garnishment has entered into a contract to sell stock to another, upon condition that the title thereto shall not pass until full payment therefor has been made, and by which it is also provided, among other things, that in event of non-payment of installments due upon such stock the payments made shall be forfeited, and the stock returned, such creditor cannot, by garnishment, reach the interest of his debtor in such contract.

5. GARNISHMENT—*what not subject to.* An indebtedness due from the garnishee to the debtor of the creditor proceeding by garnishment, and others not made parties to the action, cannot be reached by garnishment.

6. CONTRACT—*when not executed.* A contract for the sale of corporate stock is not executed where, among other things, it provides that the title thereto shall not pass and the same shall not be delivered until full payment therefor has been made, where it appears that full payment has not been made.

Attachment proceeding. Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Affirmed. Opinion filed March 7, 1905.

**Statement by the Court.** This is an appeal from a judgment in attachment in favor of the garnishees for costs, and discharging them, on their answers.

On April 15, 1903, John V. Fox sued Patrick Ryan and Patrick Conley in attachment. Appellee, P. L. Kimberly, was served as garnishee on April 16, 1903, and The Annie Laurie Mining Co. and L. C. Huck were served as garnishees on the next day. Patrick Ryan and Patrick Conley were served by publication. A declaration consisting of the common counts with an affidavit of claim was filed and on June 10, 1903, interrogatories to be answered by the garnishees were filed by leave of court. On June 10, 1903, default and judgment for $4,000 and costs was entered against Ryan and Conley.

On June 20, 1903, the garnishees filed their joint and several answer to the interrogatories, in which The Annie Laurie Mining Co. and L. C. Huck denied indebtedness, and P. L. Kimberly answered that he was only condition-

ally indebted under a contract, a copy of which was attached to the answer, and that the money was to be paid outside the state of Illinois. By the contract referred to Ryan and Conley sold to Kimberly 155,718 shares of stock of the Gold Star Mining and Milling Company, for which Kimberly paid $50,000 down and agreed to pay the further sum of $91,788.50 on or before January 28, 1903, and the final sum of $91,788.50 on or before April 28, 1903, to McCormick & Co., bankers, of Salt Lake City, Utah, for the vendors. The certificates of stock duly assigned in blank were to be deposited with McCormick & Co. forthwith, and when final payment was made, the stock was to be delivered to Kimberly. In case of failure to make such payment the stock was to be returned to Ryan and Conley. The contract contained a provision that after its execution and prior to January 28, 1903, no further indebtedness would be incurred by the Gold Star Mining and Milling Co. and that when the second payment, that of January 28, 1903, was made, all the officers and directors of the company should resign, and new officers and directors named by Kimberly should be elected to take immediate charge of the business of the corporation, and that they in return should resign and the property be turned back in case Kimberly failed to make the last payment.

It appears from the face of the contract that appellee Kimberly was indebted, if at all, not to the principal defendants, Ryan and Conley, alone, but to Ryan and Conley jointly with a number of other owners of the stock purchased by him; that these other parties were entitled to their proportion of the purchase price to be paid by Kimberly, and that the final payment which is here drawn in question was to be made to McCormick & Co., not for the use and benefit of Ryan and Conley alone, but for them jointly with the other vendors of the stock.

The contract further provided that upon the final payment of April 28, 1903, being made to McCormick & Co., all of the stock certificates, representing the 155,718 shares of stock, should be delivered to Kimberly free and clear of any liens, charges or incumbrances.

The answer further stated that Kimberly notified Ryan and Conley, as soon as he was served with the garnishment writ, that he would retain at least $5,000 out of the money due them to abide the result of this suit, and that Ryan and Conley refused to permit him to do it; that the time for the payment of the last installment expired before the filing of the interrogatories herein and before the garnishees had answered; that Kimberly paid the last installment of $91.788.50 in full on May 13, 1903, after service of the garnishees' answer, all prior installments under the contract having been paid.

It does not appear from the answer what proportion of the purchase price of the stock the principal defendants Ryan and Conley, or either of them, were or was entitled; nor whether they were entitled to any part in severalty, or to the whole jointly with their co-owners and co-vendors. The record is silent on these questions.

The plaintiff, appellant, moved for judgment against the garnishees on their answer. The motion was denied and the garnishees were discharged with judgment for costs in their favor. Errors are assigned upon the ruling of the court.

ADLER & LEDERER, for appellants.

RUBENS, DUPUY & FISCHER, for appellees.

MR. JUSTICE SMITH delivered the opinion of the court.

There is no question of fact in this case. The record presents a question of law only, which must be determined by the construction of the contract set out in the answer of Kimberly, garnishee. If the contract was an executed contract of sale at the time of the service of the garnishment writ, and the shares of stock mentioned in the contract were then the property of Kimberly, and the latter absolutely owed a certain and specific amount of money for them to Ryan and Conley, the defendants in the attachment, as contended by appellants, it was a debt subject to garnishment by the creditors of Ryan and Conley. If, on

the other hand, it was a cash sale, then no debt was created, and the garnishment must fail.

It is contended by appellants that if it had been expressly provided in the contract, or if the contract be held to mean that the money should be paid to McCormick & Co., bankers, in Salt Lake City, Utah, that would not affect the right of appellant to garnish the debt due from appellee Kimberly in this State. This proposition is admitted by appellees as the law. It is undoubtedly well established in this State that a debt, payable outside of this state, is subject to garnishment here. H. & St. F. R. R. Co. v. Crane, 102 Ill. 249; Pomeroy v. Rand, McNally & Co., 157 Ill. 176; Lancashire Ins. Co. v. Corbetts, 165 Ill. 592; Wabash R. R. Co. v. Dougan, 142 Ill. 248. The *situs* of the debt therefore has nothing to do with the solution of the question presented, although it is apparently raised in the answer of appellees.

Appellants' second contention is that the contract was an executed contract of sale, and that the money in the hands of appellee Kimberly, to be paid on the contract at the time of the service of the garnishment writ, was absolutely owing to the defendants in attachment and was subject to garnishment by their creditors. Appellees, on the other hand, claim that it was a cash sale, and that in contemplation of law the sellers let go of the property with one hand as they received the price for it with the other; and " there being no appreciable space of time between delivery and payment, the relation of debtor and creditor cannot be said to exist."

Upon an examination of the contract we find that aside from the incidental and subsidiary provisions therein contained and guarantees as to its title to mines, etc., the substance of the agreement was that Conley and Ryan sold to Kimberly the stock which was to be deposited with McCormick & Co., upon payments to be made by Kimberly to McCormick & Co., as therein provided, and the stock to remain in the hands of McCormick & Co., until the last payment therefor was made, when the stock was to be de-

livered to Kimberly. The payments for the stock to Mc-Cormick & Co., bankers, were to be for the use and benefit of Ryan and Conley, "and the holders and owners of said stock certificates respectively, and such payments and the receipt of McCormick & Co. to said second party shall be full payments to said first parties and the holders of such stock certificates respectively," etc.; "and that in case of a failure on the part of said second party to make said payments, or either of them, and the continuance of such default for fifteen (15) days, in either case, then, in that case, said McCormick & Co. will deliver all of said stock certificates to said parties of the first part, or to either of them, upon their joint order."

The intention of the parties, as expressed in the contract and gathered from the whole subject-matter of the contract, and the time and manner of the transfer of the stock, is clear. The title to the stock was not to vest in the purchaser until the stock had been fully paid for. The certificates of stock were not to be delivered until the last installment of the purchase price had been paid in cash. No element of credit can be discovered in any of the provisions of the contract. It clearly appears, on the other hand, that until the stock was fully paid for in cash, it was not to be delivered, and if the stock was not fully paid for in cash according to the provisions of the contract, it was to be returned by the bankers to the vendors and that all interests of Kimberly therein should cease and be determined. These provisions are inconsistent with the vesting of the title in Kimberly before the stock was fully paid for. These provisions are likewise inconsistent with an executed contract, at any period of time prior to the full payment in cash, and the delivery of the stock upon such full payment.

To determine whether or not the title to property has passed from the vendor to the purchaser under the provisions of contracts somewhat similar to the contract in question, is frequently difficult. In United States v. Woodruff, 22 Wall. 180, the rule is laid down which is to be applied

in determining this question. Mr. Justice Strong there says: "There are, however, certain rules for the construction of such contracts which are well settled in England, and, we think, also in this country. Mr. Justice Blackburn in his work on sales (pp. 151–2,) states two of them, and Mr. Benjamin in his treaties (2d Ed. p. 236,) adds a third. They are as follows: * * * Third: Where a buyer is by a contract bound to do anything as a consideration either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition is fulfilled, even though the goods may have been actually delivered into the possession of the buyer."

Tested by this rule no title passed to the stock in question by this contract until payment in full in cash, as provided by the contract, had been made by Kimberly. On the part of both parties to the contract many things had to be done before title to the stock passed. Titles to properties claimed to be owned by the Gold Star Mining & Milling Co. had to be shown and examined by the purchaser. It is evident from the provisions of the contract that Ryan and Conley did not own all of the shares of stock covered by the contract, and ratifications of the sale from the other owners had to be procured and deposited with McCormick & Co., together with the certificates of shares of such owners. An exhibit must be made by the vendors of the records of the corporation, also of its books of account, its charter, its stock certificate book and all books relating to or showing the organization of the corporation and its assets and liabilities; abstracts of title to all its properties were to be brought down to date, and examined by the vendee and passed upon by Chicago attorneys named in the contract, and if defects, either in the title of the corporation or in its organization, were found, they were to be cured if possible by January 28, 1903; and if in the opinion of the attorneys named such defects could not be cured, the money paid was to be refunded and the contract to become void, at the option of Kimberly, unless he should elect to waive such defects, except the stock, and pay for

the same in full upon delivery. These and other provisions
of the contract exclude the idea of an executed contract of
sale, and negative any intention of the parties to pass the
title to the stock at the time the contract was signed by
the parties, and establish the relation of debtor and creditor
between the parties.

In the case of National Revere Bank v. Bay State Shoe-
Fastening Co., 40 Atl. Rep. 255, the Supreme Court of
New Hampshire clearly defined the relations of the parties
in a sale much simpler as to its facts but involving the
same legal principles. In that case Richardson the trustee
(guarnishee) bid off certain property at an auction sale
for $600, of which sum he was required to pay $100 at the
time of the sale, as a guaranty of the bid, and the balance
was to be paid at the time of the delivery of the property;
and the defendant had thirty days in which to make the
transfer and delivery. Richardson paid the defendant
$100 immediately after the bidding. While he was
endorsing a check for that purpose he was served with the
writ. Subsequently and within the time specified he paid
the balance, in accordance with the terms of the sale. The
court say : " The contract of sale was for cash on delivery
of the property. The title to the property could not vest
in the buyer until the sale was consummated by payment
and delivery. * * * When he had paid he owed noth-
ing. Before the title vested in him, he owed nothing for
which the defendant could have enforced payment without
tendering the goods. The plaintiff, therefore, was not
wronged by the payment." Paul v. Reed, 52 N. H. 136;
Furness v. Smith, 30 Pa. St. 520, hold the same doctrine.

The statute authorizing the proceeding by garnishment
only authorizes the creditor to recover such indebtedness as
can be recovered by an action of debt, or *indebitatus as-
sumpsit*, in the name of the attachment or judgment
debtor against the garnishee. Webster et al. v. Steele et
al., 75 Ill. 544; Goodman v. Boyd, 44 Ill. App. 250. And
in Richardson et al. v. Lester et al., 83 Ill. 55, it is held
that in proceedings by garnishment, the garnishing

creditor will have no greater rights to recover of the party garnished than the execution debtor, in whose name the suit is brought. It is in point then to inquire what rights Ryan and Conley would have had against Kimberly, if he had made default in the terms of his contract and had not paid the last installment due on April 28. In that event Mc-Cormick & Co. would have returned the stock, according to the terms of the contract. Conley and Ryan could not then have sued, treating the contract as still in force and the title as vested, for the certain and liquidated amount of $91,000, without tendering the stock. But Fox, the garnishing creditor, never had control of the stock, and could not tender it under any circumstances. How, then, can he maintain this proceeding where he has no greater right than Ryan and Conley, in whose name he sues, would have had, in the event supposed? If in the event supposed Ryan and Conley had sued Kimberly, without tendering the stock, for general damages under the contract, it is clear they could not have recovered anything more than such damages as they could have shown themselves to have sustained by reason of Kimberly's breach of the contract. Without going into the true measure of such damages, it is certain that the amount would be involved in great uncertainty, and would have to be determined by a jury or the court. In other words, the damages would be unliquidated, and beyond question would not be the subject of garnishment. Capes v. Burgess, 135 Ill. 61. So that in either case, and upon the theory of the contract contended for by appellants there can be no recovery in this proceeding. Upon the theory that the contract was not an executory contract, and that the title to the stock had not passed when the writ was served, this proceeding cannot be sustained; for, as we have seen, garnishment will not lie to stop payment of money on a cash sale.

Another ground for discharging the garnishee is urged by appellee. It appears from the contract that the so-called debt sought to be reached by these proceedings was due, not to Ryan and Conley alone, but to them and a

number of other persons, owners of portions of the stock sold. Ryan and Conley did not undertake to sell all the stock themselves. Their contract covered all the stock which they owned and all the stock owned by others, subject to the ratification of such other owners. The contract provides that the payments to be made by Kimberly " shall be made by him to said McCormick & Co., for the use and benefit of said first parties and the holders and owners of said stock certificates respectively." The contract further provides that the payments should constitute a release of Kimberly from liability not only to Ryan and Conley, but to the other holders or owners of the stock certificates. It nowhere appears what amount was due to Ryan and Conley or what amount was due to the other owners of the stock.

Garnishment proceedings cannot be maintained against one indebted to the principal defendants, with others not defendants to the action. Ripley v. Peoples' Savings Bank, 119 Ill. 341, affirming same cause in 18 Ill. App. 430.

The judgment of the Superior Court must be affirmed.

*Affirmed.*