## SWIFT v. McALESTER TRUST CO. *et al.*

No. 4327.   Opinion Filed June 29, 1915.

Rehearing Denied February 15, 1916.

(154 Pac. 1175.)

**CORPORATIONS—Sale of Corporate Stock—Construction of Contract —Condition Precedent—Escrow Agreement.** S. and C., stockholders and officers in the Alderson Coal Co., entered into an escrow contract in writing that S. would sell and C. would purchase and pay $3,000 for all of S.'s stock in said company when and upon condition that the Indian Coal & Mining Co., as original lessee, should give consent to C.'s prior assignment to the Alderson Coal Co. of a ten-year leasehold estate in certain segregated coal lands of the Choctaw and Chickasaw Indians in Oklahoma; and a letter from S.. addressed to N., a major stockholder in said Indian Coal & Mining Co., which was attached to and made a part of said escrow contract, recited that it was understood that "the Alderson Coal Co. will execute a good and sufficient bond to pay all royalties and carry out the general terms of the lease," which the latter wholly failed to execute. **Held**, said contract must be construed as contemplating, as a condition precedent to C.'s absolute obligation to purchase and pay, that the Alderson Coal Co. should give such bond. **Held,** further, that, the contingency upon which. C.'s obligation to purchase said stock depended having never happened, S. was not entitled to demand and recover said $3,000. nor to an injunction restraining the return of same to C. by the escrow holder.

(Syllabus by Thacker, C.)

*Error from Superior Court, Pittsburg County;*
*W. C. Liedtke, Judge.*

Action by George M. Swift against the McAlester Trust Company and others. Judgment for certain defendants, and plaintiff brings error. Affirmed.

*Clayton & Clayton,* for plaintiff in error.

*Robt. N. McMillen* and *Gordon & McInnis,* for defendants in error.

Opinion by THACKER, C. The plaintiff in error, George M. Swift, and one of the defendants in error, J. E. Cavanagh, on April 11, 1911, addressing as their escrow holder the McAlester Trust Company, another one of the defendants in error, agreed in writing then delivered to the latter that the latter, as such holder, should deliver to Cavanagh, as purchaser, 143 shares of stock in the Alderson Coal Company, then put in escrow by Swift, as owner and seller, together with the latter's resignation as secretary of the latter company, reciting that he had sold all his stock therein, and that said escrow holder should deliver to Swift, as such seller, the purchase price of said 143 shares of stock in the form of a certified check for $3,000, also then put in escrow, when and upon condition that the Indian Coal & Mining Company, as original lessee, should give its consent, subject to its right to demand bond therefor of the Alderson Coal Company as a condition precedent to Cavanagh's prior assignment, as sublessee, to the said Alderson Coal Company, of which he was president and owned a controlling amount of the stock, of his interest in a ten-year lease on certain segregated coal lands in Oklahoma belonging to the Choctaw and Chickasaw Indians, and when such consent to such assignment should be given, Swift and Cavanagh, or their respective attorneys, should notify the McAlester Trust Company to make such deliveries. This escrow agreement in writing

included as a part thereof a letter attached thereto, addressed by Swift to his father-in-law, one J. A. Nichols, secretary, treasurer, member of the board of directors, and controlling stockholder of the Indian Coal & Mining Company, at Asheville, N. C., informing this addressee of said sale of stock in the Alderson Coal Company, including the condition of consent upon which it depended, and urging him to use his influence to cause the Indian Coal & Mining Company to give consent to Cavanagh's said assignment of said lease to the Alderson Coal Company, and informing said addressee that it was understood that:

"The Alderson Coal Company will execute a good and sufficient bond to pay all royalties and carry out the general terms of the lease."

The foregoing is, we believe, the full substance of all the terms of the written memorandum of the contract between Swift and Cavanagh addressed and delivered as aforesaid, with the said 143 shares of stock and the said certified check, to the said escrow holder, on April 11, 1911. On September 3, 1910, Cavanagh had executed an assignment of his lease to the Alderson Coal Company; but on April 11, 1911, it was not effective for want of the consent of the Indian Coal & Mining Company. On November 24, 1910, the Indian Coal & Mining Company, by resolution on its minutes, had given, but before execution withdrew, authority to its president to give the required consent in terms substantially identical with those in which it was given as hereafter shown on April 14, 1911, except that the italicized part did not occur in the resolution of November 24th; and the contract of April 11, 1911, was made in the light of that past experi-

ence and of the continued desire of Cavanagh to effect such assignment, and, as aid to that end, to have Swift write said letter to Nichols.

Immediately upon so placing said shares of stock and said certified check in escrow, an attorney and agent of Cavanagh departed for Asheville, N. C., taking said letter from Swift with him, to there procure the requisite consent of the Indian Coal & Mining Company to Cavanagh's assignment of said lease to the Alderson Coal Company; and on April 14, 1911, he procured such assignment, indorsed on the original lease contract—

"conditioned that the Alderson Coal Company execute and maintain in favor of the Indian Coal & Mining Company a $10,000 surety company bond, conditioned for the faithful performance of the terms of said lease by the Alderson Coal Company, and upon failure to give *and maintain* such bond the consent hereby given to said transfer and assignment may be withdrawn, *and the said J. E. Cavanagh shall be held bound according to the original lease.*"

It may be here incidentally observed that, on April 14, 1911, the day said consent was procured, Cavanagh, who had commenced negotiations to sell on the day the said contract was executed, sold a major amount of his stock in the Alderson Coal Company to Jonas Johanneson; but, of course, a major stockholder cannot control the volition of a corporation, as such control is in its board of directors.

It does not appear that the aforesaid form of consent was unsatisfactory to Cavanagh for a month or more, during which time he vainly endeavored to procure a surety company to give the required bond for the Alderson Coal Company; but, after he and certain other stockholders of the Alderson Coal Company, including Johan-

neson, had signed an indemnity bond required by a surety company willing only upon receiving indemnity to become surety for the Alderson Coal Company to the Indian Coal & Mining Company, and, some time between May 15, 1911, and the commencement of this suit on May 20, 1911, while he was endeavoring to induce a stockholder named J. R. Richardson to join them in the execution of such indemnity bond, upon the suggestion of Mr. Richardson, Cavanagh entered into what is called a "working contract" with the Alderson Coal Company, by the terms of which it undertook to work the leased land for him (Cavanagh), who continued to hold his estate therein and to sustain his contractual liability therefor to the Indian Coal & Mining Company, and the original purpose of Cavanagh to assign, and of the Alderson Coal Company to acquire, the said lease was abandoned.

Plaintiff sues to enjoin the return of said certified check to defendant and to require the McAlester Trust Company to deliver the same to him, and said shares of stock and resignation of office to Cavanagh. The defendant Cavanagh answers by a qualified general denial, and, which alone is important here, by a denial that the Alderson Coal Company was to give bond and a denial that the Indian Coal & Mining Company consented to the assignment. J. B. Dowell and M. J. Smith were made parties only because they had garnisheed said $3,000, as belonging to Swift.

The rights of the parties in this case depend upon their intent, as expressed in said escrow contract, with respect to whether C.'s obligation to purchase was dependent in part upon the contingency of the Alderson Coal Company's execution of said bond, and that, in effect, upon

the absolute or effective consent of the Indian Coal & Mining Company to said assignment of said lease. If so, the judgment of the trial court should be affirmed; but if said contract should be construed as only requiring, as a condition precedent to said sale by Swift and purchase by Cavanagh, a consent so qualified as to be ineffective to assign said lease until the Alderson Coal Company should execute such bond, thus placing upon Cavanagh the risk of both the volition and the ability of said company to give such bond, the judgment should be reversed.

The provision in the consent given that the Indian Coal & Mining Company might withdraw the same and that Cavanagh should be held bound according to the original lease seems to have been an undue burden upon him; but it appears that he probably waived this point as a ground of objection, and, in view of our conclusion on another point, we pass this without decision.

In view of the fact that both Swift and Cavanagh were officers and stockholders in the Alderson Coal Company, and presumably equally well informed as to whether it could give bond and of the fact that S., in said letter part of the contract, informs Mr. Nichols, of the Indian Coal & Mining Company, that the Alderson Coal Company will execute such bond, which might either have been done in advance of the giving of absolute consent or after the giving of consent qualified by requiring such bond as a condition precedent to its effect, we are of the opinion that a correct construction of said contract requires us to hold that Cavanagh's obligation to purchase Swift's stock was contingent upon an event, the execution of said bond, that never happened.

It is neither alleged nor proven that Cavanagh is blamable for the inability or unwillingness of the Alderson Coal Company to give the required bond, and it must be presumed that its board of directors controlled its volition. Cavanagh, as he was not bound to refrain from doing, sold his controlling interest in the stock of this company immediately after entering into said escrow contract; but it does not appear that the failure of the Alderson Coal Company to give the bond was due to this or to any act or omission on his part, or, for that matter, upon the part of Swift.

Numerous propositions and counter propositions are urged in the briefs of the parties to this case, and each and all have deserved and had our serious consideration; but we deem it unnecessary to enter into a discussion of each in detail, the foregoing views being our answer to them all.

For the reasons stated, the judgment of the trial court should be affirmed.

BREWER, C., being disqualified, did not participate in this decision, and RITTENHOUSE, C., served in his stead.

By the Court: It is so ordered.