### CHAPMAN, State Com'r of Banking, v. PENIX.
#### (No. 2498.)

(Court of Civil Appeals of Texas. Amarillo. May 27, 1925.)

1. **Banks and banking** ⊂═⊃49(8)—**Evidence held to sustain finding that purchase of stock in bank was conditional and purchaser thereof not liable for assessment on insolvency.**

Evidence *held* to sustain finding that purchase of stock in bank was conditional on purchaser's inspection of books and investigation of bank's affairs, and that purchaser thereof was not liable for assessment to pay debts of bank on insolvency.

2. **Banks and banking** ⊂═⊃48(2) — **Buyer of stock from individual owner thereof held to occupy more advantageous position than if he had subscribed for it.**

One who buys stock of bank from stockholder who is individual owner of it occupies a more advantageous position in suits for assessments on bank's insolvency than if he had subscribed for or purchased it from the company in the first instance.

3. **Banks and banking** ⊂═⊃48(2)—**Effect of seller's fraud in sale of bank stock held to vitiate transaction ab initio.**

In view of Vernon's Ann. Civ. St. Supp. 1922, art. 3973a, fraudulent representations of seller of bank stock, as to financial condition of bank and value of stock, *held* to vitiate contract of sale ab initio at option of purchaser.

4. **Banks and banking** ⊂═⊃48(2)—**Alleged purchaser of stock held not liable for assessment.**

Where sale of bank stock was conditional on purchaser's investigation of financial affairs of bank and value of stock, and by investigation purchaser discovered that statements of seller concerning solvency of bank were false, and immediately refused to complete sale, he was not liable for assessment against shares of stock to pay debts of bank.

5. **Banks and banking** ⊂═⊃48(2)—**Seller's liability for assessment of stock not shifted to alleged buyer without latter's consent.**

Notwithstanding that buyer of stock had accepted certificates, where he had not receipted stock book nor authorized seller to so register transfer as to show passing of title seller was the registered holder, and liabilities resting on him as such could only be shifted on buyer through a novation by substitution of buyer for him, which could only be done with buyer's consent.

Appeal from District Court, Young County; W. F. Schenck, Judge.

Action by J. L. Chapman, as State Commissioner of Banking, against S. A. Penix. Judgment for defendant, and plaintiff appeals. Affirmed.

Brown & Graham, of Graham, and W. J. Rogers, of Eastland, for appellant.

W. H. Penix, of Mineral Wells, and Marshall & King, of Graham, for appellee.

HALL, C. J. The appellant, J. L. Chapman, as state commissioner of banking, filed this suit against the appellee, Penix, alleging that on or about January 4, 1924, as such commissioner, he levied an assessment against each share of stock owned by all persons in the Guaranty State Bank of Graham on said date, and for 12 months prior thereto, the assessment being for $25,000, or 100 per cent. assessment, and which was made for the purpose of paying off the indebtedness of the bank; that S. A. Penix, was the owner of 20 shares of stock in said bank within 12 months prior to the time the bank became insolvent, and by reason thereof became liable to pay said commissioner the sum of $2,000.

The defendant, Penix, answered by general demurrer, general denial, and specially that, along about the month of March, 1923, at the instance of J. C. Lovelace, the then president of said bank, and who was the ostensible owner of a great deal of stock in said bank, he considered the matter of purchasing from said Lovelace 20 shares of said stock at par value of $100 per share; that the contract between said Lovelace and Penix was verbal, and substantially as follows: That the said Penix would pur-

chase 20 shares of stock from said Lovelace upon condition that Penix would have an opportunity to investigate the financial standing of said bank, and if, upon investigation, said Penix, was satisfied with the standing of the bank, and the financial value of the shares, he would purchase the same; that said Penix was to have full and complete opportunity to find out by his' own personal investigation, the condition of said bank and the value of said stock; and with this understanding, the stock was issued to the said Penix and paid for by him, with the agreement that, if, upon investigation, he found the condition of the bank unsatisfactory, or the stock of less value than par, the sale was not to be consummated, and the stock was to be reassigned and delivered to Lovelace, and the money returned to Penix. He further alleged, in substance, that when he investigated the condition of the bank and the value of the stock in April, 1923, he found the bank in bad condition financially, and that the value of the stock was less than par; that the stock was returned to Lovelace, who repaid the $2,000 to Penix; that in truth and in fact the sale was never consummated or completed; that it was a conditional sale, so understood by both parties at the time, and was acted upon and treated as such. The defendant further alleged, in substance, that at the very time of the negotiations above stated, the bank was insolvent and in failing condition; that Lovelace, as an officer of the bank, knew it was insolvent, and that the stock was worthless, and knew that the bank was liable to be closed at any time; that he represented said stock as being worth .more than par, and stated that upon such investigation Penix would find it to be so, and, relying upon said representations, and the promise that his money would be refunded to him if he found said representations to be untrue, defendant parted with his money; that the representations were false and fraudulent and were known to be so by Lovelace, and were relied upon by appellee; that, after appellee investigated and found the bank to be insolvent, he returned the stock to Lovelace, who repaid him the $2,000.

The substance of the court's findings is as follows: Plaintiff, as bank commissioner. of Texas, closed the doors of the Guaranty State Bank on January 4, 1924, declaring it insolvent, and commenced liquidation proceedings. The negotiations between Lovelace and defendant for the purchase of the 20 shares of stock commenced early in February, 1923, at which time Lovelace, the president of the bank, knew that it was in a failing condition; that he represented to defendant that the stock was worth at least par, and possibly more; that the agreement between Lovelace, the owner of the stock, and Penix, was that the latter should have an

opportunity of going over the books, records, and papers of the bank, and, if found satisfactory, the sale would then be completed. The agreement was that there would be no sale unless the condition of the bank proved to be satisfactory to Penix. Upon this condition the shares were transferred by certificate to Penix, who receipted Lovelace in writing for the stock; the receipt being for the purpose of mutual protection in the transaction. Penix did not receipt the stock book, but Lovelace took the written receipt and pasted it in the stock book kept by the bank, without the knowledge or consent of Penix. That a short time after this transaction Penix was called to the bank to go over the papers, and at that time, in the presence of Lovelace and a director, expressed his disapproval of the condition of the bank, and informed Lovelace that the sale would not be consummated, which was in accordance with their previous understanding. A short time thereafter he reindorsed the stock certificate to Lovelace, and Lovelace repaid the purchase money, stating this closed their negotiations. Lovelace failed to place the transaction in writing upon the books of the bank, and the stock appeared upon the books in the name of Penix at the time of the trial. The stock was owned by Lovelace, although in the name of defendant, a fact which defendant did not know. Defendant had confidence in the integrity of Lovelace, is the reason why he paid the money at the time he did, and that Lovelace kept the money at all times intact in.a special fund. The court concludes as a matter of law that Penix is not liable, for the reason that the transaction between the parties was a conditional sale in which the conditions were not met and the sale was never completed; that Lovelace was the owner of the shares, and that the title never passed from him to the defendant; that the defendant was not bound by the act of Lovelace in placing his name upon the stock book without his knowledge or consent. From the judgment entered in accordance with the conclusions, this appeal is prosecuted.

[1, 2] The evidence sustains the court's findings of fact, and, as based upon the findings, we think the court properly concluded, as matter of law, that Penix was not liable. The instant case must be distinguished from a suit upon a subscription agreement for stock, and must also be distinguished from a suit based upon a sale of stock by a corporation. The commissioner of banking and insurance bases his right to recover upon the alleged fact that Lovelace, who owned the stock, sold it to Penix, who thereafter became the actual owner thereof, and thereby became liable to pay the amount assessed by him under the statute. One who buys stock of a corporation

from a stockholder who is the individual owner of it occupies a more advantageous position in suits of this kind than if he had subscribed for or purchased the stock from the company in the first instance. 2 Fletch. Cyc. Corp. p. 1100, § 520.

There is nothing in the statutes under which this suit is brought which confers greater rights upon the commissioner with reference to the liability of Penix than the bank itself had. If Penix never in fact became a stockholder in the bank, the commissioner occupies no more favorable position with reference to him than the bank would have under such circumstances. The right to recover rests upon proof of the alleged fact that the negotiation and transaction between Lovelace and Penix resulted in the latter becoming a stockholder in the bank. In this case the question of the ownership of the shares is to be determined from a consideration of the terms of the contract, and the intention of the parties must control. 14 C. J. 704, § 1082. Although the money was paid and the new certificates were issued to Penix, the evidence is uncontradicted that they did not consider the sale as completed until Penix had inspected the books and investigated the affairs of the bank and found them to be as represented by Lovelace. Such inspection of the books was by the express terms of the contract made a condition precedent to the consummation of the sale. As disclosed by the evidence, and found by the court, and aside from the issue of fraud, there is an agreement to thereafter purchase or at most a contract of sale upon condition precedent, where the condition was never met. 1 Williston Sales (2d Ed.) §§ 6, 8; 1 Mechem Sales, §§ 3, 533–535.

[3] Moreover, Penix charged that what was done by him was through the fraudulent representations of Lovelace as to the financial condition of the bank and the value of the stock. Upon sufficient evidence the court found that the representations made by Lovelace were false and fraudulent. We therefore have a case where the defendant entered into a conditional contract of sale, induced to do so by the fraudulent representations of the plaintiff. The effect of the fraud is to vitiate the contract ab initio at the option of Penix. Wintz v. Morrison, 17 Tex. 383, 67 Am. Dec. 658; Woods & Co. v. Half, Weiss & Co., 44 Tex. 633. Penix never receipted the company for the certificates of stock by signing the stock book, and Lovelace kept the money paid him by Penix as a special deposit pending the investigation of the bank's affairs. As soon as Penix completed his investigation, he decided that he did not want to close the deal, and by mutual consent the certificates of stock were returned to Lovelace, and the money was returned to Penix. This ended the transaction.

[4] By the investigation he discovered that statements of Lovelace concerning the solvency of the bank were false, and he immediately refused to complete the sale, and is therefore not liable for the amount of the assessment. Stufflebeam v. De Lashmutt (C. C.) 83 F. 448. The statements made by Lovelace are of the character declared by V. S. C. S. (1922 Supp.) 3973a, to be fraudulent. The passing of the title was conditioned upon the truth of these statements.

"Where a contract of sale contains a stipulation in the nature of a condition precedent, the contract does not become binding and enforceable until such condition has been fulfilled, notwithstanding possession of the stock is given to the purchaser for certain purposes only. As in other cases, the intention of the parties, to be ascertained from a consideration of the entire instrument, controls. * * * If by the terms of the contract the buyer is bound to do anything as a consideration, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition is fulfilled, even though the certificate may be delivered." 6 Fletch. Cyc. Corp. § 3887; Kennedy v. Lee, 147 Cal., 596, 82 P. 257; Ware v. Hooper (C. C.) 98 F. 160; McCormick v. Badham, 191 Ala. 339, 67 So. 609; Meinershagen v. Taylor, 169 Mo. App. 12, 154 S. W. 886; Swift v. McAlester Trust Co., 55 Okl. 379, 154 P. 1175; 14 C. J. 685, § 1056.

"Where a purchase of stock is subject to the condition that an examination by the purchaser upon his return from a journey shall show the corporation to be prosperous as represented by the seller, and the purchaser, on his return, finds it insolvent, he may rescind without showing that it was insolvent when the contract was made." Truman v. Lombard, 10 App. Div. 430, 42 N. Y. S. 262.

"A contract for the sale of stock may be upon an express condition precedent, and in such a case the contract is not enforceable until the condition is performed or fulfilled." 6 Fletch. Cyc. Corp. § 3888.

See, also, Beardsley v. Beardsley, 138 U. S. 262, 11 S. Ct. 318, 34 L. Ed. 928; Snowstorm Mining Co. v. Johnson, 186 F. 745, 108 C. C. A. 615; Ryan v. Kimberly, 118 Ill. App. 361; Pacific Power & Light Co. v. White, 96 Wash. 18, 164 P. 602, Ann. Cas. 1918B, 125; Mason v. Lievre, 145 Cal. 514, 78 P. 1040; Mitchell v. Wedderburn, 68 Md. 139, 11 A. 760; Frazier v. Simmons, 139 Mass. 531, 2 N. E. 112; Peavey v. Wells, 136 Minn. 180, 161 N. W. 508; Barnard v. Tidrick, 35 S. D. 403, 152 N. W. 690; Gilfallan v. Gilfallan, 168 Cal. 23, 141 P. 623, Ann. Cas. 1915D, 784.

[5] It appears from the record that, although Penix had accepted the certificates of stock, he had not receipted the stock book, and had not authorized Lovelace to so register the transfer as to show the passing of the title. Lovelace was really the registered holder of the shares, and the liabilities resting upon him as such could only be shifted to Penix by a novation accomplished through

the substitution of Penix for him, and this could only be done with the consent of Penix. Russell v. Easterbrook, 71 Conn. 56, 40 A. 905.

The judgment is affirmed.